UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JASMINKA HUSEJNOVIC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-00213-JMS-TAB |
| | ) | |
| BWAY CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ORDER

Plaintiff Jasminka Husejnovic filed this lawsuit against her former employer, BWAY Corporation ("BWAY"), alleging interference and retaliation in violation of the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. § 2601 et seq. BWAY has filed a Motion for Summary Judgment, [Filing No. 33], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R.

1

Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative.  *Montgomery v. Am. Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).  Any doubt

as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.  The Parties

BWAY is "one of the largest rigid packaging companies in North America."[1]  [Filing No. 33-2 at 1.]   BWAY has a small packaging facility in Indianapolis.  [Filing No. 33-2 at 1.]

Ms. Husejnovic was employed by BWAY from 1997 until 2017 and worked at the facility in Indianapolis.  [Filing No. 33-1 at 13-14; Filing No. 33-2 at 1; Filing No. 41-2 at 1.]  When she first started, she worked as a "packer."  [Filing No. 33-1 at 13-14.]  Over time, she was promoted to "pack intake," [Filing No. 33-1 at 14], then to "material handler," [Filing No. 33-1 at 15], and finally in 2006 or 2007, to "quality technician," [Filing No. 33-1 at 16-19].  Ms. Husejnovic worked as a quality technician until her termination in May 2017.  [Filing No. 33-1 at 16-19.]

Ms. Husejnovic's son Denis lives with Ms. Husejnovic's mother, Zumra Agic, in Gracanica, Bosnia.  [Filing No. 33-1 at 13.]  Denis was diagnosed with schizophrenia, which manifests in hallucinations and aggressive behaviors.  [Filing No. 33-1 at 7; Filing No. 33-1 at 10.]  He requires constant care and cannot leave the house on his own.  [Filing No. 33-1 at 9-10.]  Ms. Agic also

---

[1] In 2018, BWAY and several other leading packaging companies formed Mauser Packaging Solutions.  [Filing No. 33-2 at 1.]

suffers from serious medical conditions.  [Filing No. 33-1 at 11.]  She has suffered four or five strokes, has high blood pressure, and struggles to walk and use her extremities.  [Filing No. 33-1 at 23.]

### B.  Ms. Husejnovic's FMLA Leave

Periodically, Ms. Husejnovic determined that she needed to take FMLA leave to care for her mother and her son in Bosnia.  [Filing No. 33-1 at 26.]  Each time she determined she needed to take FMLA leave, she followed the same procedure.  [Filing No. 33-1 at 83-84.]  Her first step was to contact BWAY's Human Resources Department for information, where she would consistently be told that she needed to complete paperwork for either her mother or her son, but not both.  [Filing No. 33-1 at 26; Filing No. 41-2 at 2 ("Each year, various Human Resources Personnel told me that I only needed to complete the paperwork for one person, either my mother or son, but not for both.").]  She was directed to submit the paperwork to The Standard Insurance Company, ("The Standard"), which served as BWAY's administrator for FMLA leave requests.  [Filing No. 33-1 at 27; Filing No. 33-3 at 3.]  The Standard was then responsible for providing Ms. Husejnovic with written notices of her rights and obligations under the FMLA, explaining to her the next steps in the FMLA leave process, and sending her a "Certification of Health Care Provider" form (the "Doctor's Form"),[2] which Ms. Husejnovic was required to have completed by the physician treating the family member whose care was the subject of the FMLA leave.  [Filing No. 33-3 at 3.]

After receiving the Doctor's Form from The Standard, Ms. Husejnovic would send the form to her friend Mensura in Bosnia.  [Filing No. 33-1 at 36-38.]  Mensura—who also helped Ms. Agic with daily tasks, such as paying bills—would then take the Doctor's Form to Ms. Agic's doctor.

---

[2] The Doctor's Form detailed the relevant medical condition and care needs for the leave request.

[Filing No. 33-1 at 38.]  After Ms. Agic's doctor completed the Doctor's Form, Mensura would have it translated into English and then send it back to Ms. Husejnovic, who would then send it to The Standard.  [Filing No. 33-1 at 37-39.]  The Standard was responsible for reviewing and approving or denying FMLA leave requests, [Filing No. 33-3 at 4], but Ms. Husejnovic was also required to get the approval of BWAY's Human Resources Department and her manager, [Filing No. 33-1 at 70].  Ms. Husejnovic was granted FMLA leave every time she requested it.  [Filing No. 33-1 at 28; Filing No. 33-1 at 141.]

### 1.  2015 and 2016 FMLA Leave

On February 19, 2015, Ms. Husejnovic submitted paperwork to The Standard requesting three weeks of FMLA leave to care for her mother.  [Filing No. 33-1 at 147.]  On February 26, 2015, The Standard informed her that her "request for Family/Medical Leave to care for your parent Zunra Ajic (sic) has been approved from 03/16/2015 through 04/05/2015."  [Filing No. 33-1 at 163.]  Ms. Husejnovic took FMLA leave during those dates.  [Filing No. 33-1 at 48.]  During her leave, she attended doctor's appointments with both her mother and son, [Filing No. 33-1 at 67; Filing No. 41-2 at 2], and at some point during those three weeks, Ms. Husejnovic traveled with her son to Mostar, Bosnia and Sarajevo, Bosnia, [Filing No. 33-1 at 50].  They spent a total of two days visiting the cities.  [Filing No. 33-1 at 50.]  Ms. Husejnovic testified that she did not request or take any vacation days during the time she was on FMLA leave in 2015.  [Filing No. 33-1 at 50.]  Ms. Husejnovic returned to her position as quality technician without incident.  [Filing No. 33-1 at 18-19.]

On February 4, 2016, Ms. Husejnovic submitted paperwork to The Standard in which she requested roughly two weeks (March 15, 2016 through March 31, 2016) of FMLA Leave.  [Filing No. 33-1 at 166.]  On February 17, 2016, The Standard informed her that her "request for

Family/Medical Leave to care for your parent Zumra Agic has been approved from 03/14/2016 through 04/04/2016."[3]   [Filing No. 33-1 at 180.]   During her leave, she attended doctor's appointments with both her mother and son.  [Filing No. 33-1 at 67; Filing No. 41-2 at 2.]  At some point during her 2016 FMLA leave, Ms. Husejnovic and her son traveled to Istanbul, Turkey for a two-day vacation.  [Filing No. 33-1 at 61.]  As she did after taking FMLA leave in 2015, Ms. Husejnovic returned to her position as quality technician without incident.  [Filing No. 33-1 at 18-19.]

### 2.  2017 FMLA Leave

Much like the two years prior, in 2017, Ms. Husejnovic determined that she needed to take FMLA leave to care for her mother and son.  [Filing No. 33-1 at 64.]  On March 13, 2017, The Standard informed her that her "request for Family/Medical Leave to care for [her] parent, Zumra Agic has been approved from 04/26/2017 through 05/12/2017."  [Filing No. 33-3 at 64.]  Ms. Husejnovic intended to take a vacation with her son again in 2017, so she requested and was granted two vacation days.  [Filing No. 41-2 at 2.]  However, the nature of her son's condition required medical approval before he could travel, so Ms. Husejnovic was unable to plan their vacation in advance.  [Filing No. 33-1 at 118-19; Filing No. 41-2 at 2.]  Thus, she requested and was granted vacation days for the first two days of her FMLA leave in lieu of the actual days of the vacation.  [Filing No. 33-3 at 4; Filing No. 41-2 at 2.]

---

[3] Ms. Husejnovic testified that she requested one week of vacation on top of her FMLA leave, and the FMLA dates changed "because [of her] vacation."  [Filing No. 33-1 at 60-63.]  Based on Ms. Husejnovic's testimony, it appears that she was typically scheduled to work five days one week and two days the next week, but each week was characterized as a full week.  She testified that although she only requested two days of vacation, it was documented as a full week of vacation. [Filing No. 33-1 at 60-63.]

Approximately one week after arriving in Bosnia, Ms. Husejnovic's son's doctor approved him to travel.  [Filing No. 33-1 at 107.]  She found a good deal online, and she booked a vacation to Istanbul, Turkey from May 5, 2017 through May 7, 2017 with her son and her friend Mensura. [Filing No. 33-1 at 97-99; Filing No. 33-1 at 109; Filing No. 41-1 at 18.]  Ms. Husejnovic did not inform anyone at BWAY that she had scheduled her vacation, [Filing No. 33-1 at 118], and she testified "there is no document" allowing her to take a vacation between May 5, 2017 and May 8, 2017, [Filing No. 33-1 at 139].  Ms. Husejnovic testified that they did not attend any medical appointments while they were in Turkey; it was "[j]ust vacation."  [Filing No. 33-1 at 109.] Following her return from FMLA leave, Ms. Husejnovic returned to her position as quality technician without incident.  [Filing No. 33-1 at 111; Filing No. 41-1 at 19.]

### C.  Ms. Husejnovic's Termination

Following her return from FMLA leave in 2017, Ms. Husejnovic returned to work as normal for two weeks.  [Filing No. 33-1 at 111; Filing No. 41-1 at 19.]  In mid-May 2017, Ken Muncy—the Plant Manager at BWAY's Indianapolis facility where Ms. Husejnovic worked—received a "complaint" that Ms. Husejnovic had traveled to Turkey while she was approved for FMLA leave to care for her mother in Bosnia.  [Filing No. 33-2 at 2.]  Mr. Muncy reviewed several posts on Ms. Husejnovic's Facebook page, which included photographs of Ms. Husejnovic, her son, and Mensura in front of famous landmarks in Istanbul, as well as "Check-Ins" indicating that Ms. Husejnovic had been in Istanbul from May 5, 2017 through May 8, 2017.  [Filing No. 33-2 at 3.]  Mr. Muncy then reviewed Ms. Husejnovic's FMLA leave documentation, "which showed that she was approved for leave to care for her mother in Bosnia between April 26, 2017 and May 12, 2017."  [Filing No. 33-2 at 2.]

On May 19, 2017, Doug Bedee, Ms. Husejnovic's quality manager, approached Ms. Husejnovic and told her that Mr. Muncy needed to speak with her.  [Filing No. 33-1 at 111.]  Ms. Husejnovic went to Mr. Muncy's office and met with Mr. Muncy, Mr. Bedee, and Samantha Regnier, BWAY's Human Resources Manager.  [Filing No. 33-1 at 113; Filing No. 33-1 at 117-18; Filing No. 33-2 at 3.]  Ms. Husejnovic testified that she explained the situation to Mr. Muncy, including her son's condition, where they had gone, and that she had always taken her son on a short vacation during her prior FMLA leaves.  [Filing No. 33-1 at 115-19.]  She testified that at the end of the discussion, both Mr. Muncy and Mr. Bedee said everything would be okay and that both Mr. Muncy and Mr. Bedee were emotional and sympathetic.  [Filing No. 33-1 at 120.]  Mr. Muncy told her that he would let her know when BWAY made a decision, and she returned to work.  [Filing No. 33-1 at 121.]  In his declaration, Mr. Muncy states that based on his review of Ms. Husejnovic's Facebook posts, together with her admission that she had taken a vacation in Turkey during the time she was approved for FMLA leave to care for her mother in Bosnia, he "concluded that Ms. Husejnovic did not use her FMLA leave for its intended purpose."  [Filing No. 33-2 at 3.]

Ms. Husejnovic testified that on May 23, 2017, she received a phone call from Ken Muncy.  [Filing No. 33-1 at 127.]  She testified that it was "only Ken Muncy" on the call, and that "[h]e just said you're terminated and he hung up. . . . It was two second[s]."  [Filing No. 33-1 at 124; Filing No. 33-1 at 127.]  Ms. Husejnovic received a letter from Ms. Regnier confirming the termination of her employment, and stating, in part, that BWAY had discovered Ms. Husejnovic was vacationing in Turkey during the time she was on FMLA leave, and that Ms. Husejnovic admitted that she had done the same in prior years.  [Filing No. 33-3 at 72.]  The letter concluded that "[t]his

is clearly a case of fraudulent FMLA," which, per BWAY's work rules, was grounds for termination. [Filing No. 33-3 at 72.]

### D. The Lawsuit

Ms. Husejnovic filed this lawsuit on January 21, 2019, alleging that BWAY violated her rights under the FMLA. [Filing No. 1.] Ms. Husejnovic's Statement of Claims states that BWAY "interfered with Plaintiff's use of FMLA. The Plaintiff submitted medical documentation for her mother's illness but did not do so for her son's because she was told that only one certification was necessary." [Filing No. 30 at 2.] She also asserts that "the Defendant terminated the Plaintiff in retaliation for her use of FMLA." [Filing No. 30 at 2.] She adds that BWAY's "alleged legitimate non-discriminatory reason for terminating her was a pretext for discrimination and was in retaliation for Plaintiff's intent on exposing [a] poor product being approved for use when it did not pass quality control tests." [Filing No. 30 at 2-3.]

## III.
### DISCUSSION

BWAY's motion requests that the Court grant summary judgment in its favor on all of Ms. Husejnovic's claims under the FMLA. [Filing No. 34 at 1.] Generally, BWAY contends that Ms. Husejnovic was never denied FMLA benefits and that it terminated Ms. Husejnovic based on its honest belief that she abused her FMLA leave when she took a vacation with her son to Istanbul, Turkey. [Filing No. 34.] The Court will address each of Ms. Husejnovic's claims in turn.

### A. FMLA Interference

In its motion, BWAY argues that Ms. Husejnovic's interference claim fails because she "cannot present evidence that she was denied any benefits to which she was entitled under the FMLA." [Filing No. 34 at 11.] It argues that for Ms. Husejnovic's claim to be viable, she must show that FMLA benefits were actually withheld. [Filing No. 34 at 9 (citing *Scruggs v. Carrier*

*Corp.*, 688 F.3d 821, 825 (7th Cir. 2012)).]  But, BWAY contends, Ms. Husejnovic's testimony that she was granted FMLA leave each time she requested it, and the fact that she was reinstated to her same position each time she returned, prevent her from doing so.  [Filing No. 34 at 11-12 (citing Filing No. 33-1 at 27; Filing No. 33-3 at 3.]  Additionally, BWAY argues that its "honest suspicion" that Ms. Husejnovic misused her FMLA leave is sufficient to defeat her FMLA interference claim.  It argues that the documents submitted to The Standard only mention or reference her mother and that regardless of what she might have told other BWAY employees, Mr. Muncy "knew nothing about her son's conditions or care needs when he confronted her about her misuse of FMLA leave."  [Filing No. 34 at 16.]

Ms. Husejnovic's response does not distinguish her interference claim from her retaliation claim.  In any event, Ms. Husejnovic does not respond to BWAY's argument that BWAY never interfered with her FMLA rights and that she was never denied entitlements under the FMLA.  Indeed, somewhat perplexingly, Ms. Husejnovic's response does not use the word "interfere" or "interference" (nor does it contain the words "retaliate" or "retaliation").  [*See* Filing No. 34.]  Ms. Husejnovic instead argues that she "did not abuse her FMLA Leave."  [Filing No. 42 at 7.]  She states that she "completed the FMLA paperwork for her mother and not for her son, as she was told to do."  [Filing No. 42 at 5.]  She notes that she requested two days of vacation "in lieu of knowing the exact dates she would be able to go" on the trip with her son, [Filing No. 42 at 7], and that  because she "took a couple weeks off to care for her mother and son," it is improper to look solely "at a small portion of the time she took off," [Filing No. 42 at 5].  She maintains that she was able to care for her son in Turkey just as she would have in Bosnia and the difference in location is immaterial, [Filing No. 42 at 6 (citing *Ballard v. Chi. Park Dist.*, 741 F.3d 838, 840

(7th Cir. 2014))], and that by taking her son to Turkey, "her mother got a break from the stress of having her grandson around," [Filing No. 42 at 7].

BWAY replies that Ms. Husejnovic's response makes no distinction between her interference claim and her retaliation claim. [Filing No. 43 at 2.] It argues that she "concedes that she was allowed to take leave and was reinstated to her previous role," [Filing No. 43 at 2], whch defeats her FMLA interference claim, [Filing No. 43 at 3].

Ms. Husejnovic "carries the burden of proving an FMLA interference claim. To establish such a claim, an employee must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 993 (7th Cir. 2010) (internal citations omitted). The parties agree that Ms. Husejnovic satisfies the first four elements. [Filing No. 34 at 12.] The issue is whether BWAY denied Ms. Husejnovic FMLA benefits to which she was entitled.

Ms. Husejnovic has not articulated which FMLA benefits she was denied, nor has she designated evidence demonstrating that she was denied FMLA benefits. She testified that every time she requested FMLA leave, it was approved, [Filing No. 33-1 at 141], and that she was reinstated to her position after each FMLA leave, [Filing No. 33-1 at 18-19]. Ms. Husejnovic's testimony and response brief make clear that she was not denied her right to take FMLA leave, nor her right to be reinstated upon her return from FMLA leave. Moreover, nothing in her designated evidence or her response indicate that she was denied other FMLA benefits, such as her right to maintain health insurance benefits, 29 U.S.C. § 2614(c); her right to return to equivalent employment benefits, pay, and terms and conditions of employment, 29 U.S.C. § 2614(a)(1); or

11

her right to maintain any employment benefits accrued prior to her leave, 29 U.S.C. § 2614(a)(2). There is simply nothing from which the Court could determine that BWAY interfered with Ms. Husejnovic's rights under the FMLA.  Therefore, BWAY's motion is granted as it relates to Ms. Husejnovic's FMLA interference claim.

### B.  FMLA Retaliation

BWAY argues that Ms. Husejnovic's retaliation claim fails because she has no evidence of discriminatory intent.  [Filing No. 34 at 17.]  It argues that Ms. Husejnovic must show that BWAY acted with discriminatory or retaliatory intent—that "her use of FMLA leave *caused* the adverse employment action," [Filing No. 34 at 17 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)) (emphasis in original)]—but that she cannot show a causal connection between her FMLA leave and subsequent termination because BWAY had an honest suspicion that she abused her FMLA leave, [Filing No. 34 at 17-18].  BWAY argues that Ms. Husejnovic was never denied FMLA leave, that she was reinstated to her same position after returning from FMLA leave, and that she was terminated only after BWAY developed an honest suspicion that Ms. Husejnovic abused her FMLA leave by taking a vacation with her son.  [Filing No. 34 at 19.]  Additionally, BWAY argues that Ms. Husejnovic cannot succeed under the *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis.  [Filing No. 34 at 19.]  It argues that she has no evidence of a similarly-situated employee who was treated more favorably than her.  [Filing No. 34 at 19-20.]  Even if she could set forth a *prima facie* case, BWAY argues, her claim nevertheless fails because BWAY has offered a legitimate, non-discriminatory reason for her termination.  Last, BWAY adds that Ms. Husejnovic's "pretext argument" fails because: (1) she has not offered (and cannot offer) any evidence to support this theory; and (2) she must show that BWAY's reason for

terminating her was pretext for discrimination or retaliation for her use of FMLA leave, not that it was pretext for some other reason unrelated to her leave.  [Filing No. 34 at 21.]

As noted above, Ms. Husejnovic's response makes no distinction between her interference and retaliation claims.  She does not respond to BWAY's *McDonnell-Douglas*-based argument, nor does she identify any similarly situated employee.  Generally, she responds that she did not abuse her FMLA leave, and "[a]lthough the standard of honest belief controls whether FMLA has been abused, this should not create circumstances where employees, especially those who have been employed for almost twenty years, are not given adequate time to explain themselves or any facts that have been discovered."  [Filing No. 42 at 8.]  She argues that when BWAY discovered the Facebook posts from Turkey, it "conducted an investigation before confronting Ms. Husejnovic about what [it] discovered."  [Filing No. 42 at 8.]  She argues that she should have been given time to prepare an explanation and been given an interpreter to assist her.  [Filing No. 42 at 8.]  She asserts that BWAY's failure to afford her "these courtesies[] rendered the honest belief standard as a weapon which was used to terminate a hard-working employee of nearly twenty years."  [Filing No. 42 at 8.]

BWAY replies that Ms. Husejnovic does not point to any evidence suggesting that BWAY did not have an honest belief that she misused her FMLA leave.  [Filing No. 43 at 3.]  It argues that although she sets forth reasons why she did not abuse her FMLA leave, "[t]hat is not the issue before the Court; rather the issue is whether BWAY had an honest belief that Plaintiff did not use the leave 'for the intended purpose of the leave.'"  [Filing No. 43 at 3 (quoting *Scruggs*, 688 F.3d at 825).]  That is, BWAY argues, even if BWAY and Mr. Muncy were incorrect in concluding that Ms. Husejnovic abused her leave, Ms. Husejnovic has presented neither argument nor evidence to dispute BWAY's honest suspicion that she abused her leave.

13

"A retaliation claim [under the FMLA] requires proof of discriminatory or retaliatory intent." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819 (7th Cir. 2012); *see also Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) ("A plaintiff alleging that her "employer retaliated against her for exercising her rights under the FMLA can proceed under … methods of proof familiar from employment discrimination litigation."). Ms. Husejnovic "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011) (quoting *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)). Alternatively, she can show that she was performing her job satisfactorily, but she was treated differently from other similarly situated employees who did not take FMLA leave. *Id.* An employer's "honest suspicion" that an employee misused her FMLA leave is enough to defeat an employee's FMLA retaliation claim because the belief that FMLA leave was misused, as opposed to the employee's rightful use of FMLA leave, is the reason for the materially adverse action. *Scruggs*, 688 F.3d at 827 ("[Defendant] held an 'honest suspicion' that [Plaintiff] was misusing his FMLA leave at the time it made the decision to terminate him. We cannot conclude from these facts that [Defendant] intentionally discriminated against [Plaintiff] for taking FMLA leave. If we were to hold otherwise, virtually any FMLA plaintiff fired for misusing his leave would be able to state a claim for retaliation.").

As with the interference claim, the parties appear to agree on the key points. Ms. Husejnovic agrees that "the standard of honest belief controls." [Filing No. 42 at 8.] Though Ms. Husejnovic articulates several reasons why she believes she did not misuse her FMLA leave, those reasons do not address BWAY's honest suspicion that she misused her FMLA leave.

The paperwork available to Mr. Muncy at the time he conducted his investigation showed the following:

- Ms. Husejnovic requested and was granted FMLA leave from April 26, 2017 until May 12, 2017, to provide care for her mother in Bosnia, [Filing No. 33-1 at 182-84; Filing No. 33-2 at 3; Filing No. 41-2 at 1-2];

- Ms. Husejnovic requested and was granted vacation days on April 26, 2017 and April 27, 2017, [Filing No. 33-1 at 186], and she had not requested nor been approved for vacation on May 5, 2017 through May 8, 2017, [Filing No. 33-1 at 139]; and

- Ms. Husejnovic posted photographs of herself, her son, and her friend in Istanbul, Turkey on May 5, 2017 through May 8, 2017, [Filing No. 33-1 at 187-191].

Moreover, when Mr. Muncy questioned Ms. Husejnovic about her vacation, she admitted that she traveled to Istanbul, Turkey with her son and that she had done so during her prior FMLA leaves. [Filing No. 33-3 at 72.]  On its face, this information is sufficient for Mr. Muncy to develop an honest suspicion that Ms. Husejnovic had misused her FMLA leave.

Ms. Husejnovic argues that BWAY told her she did not need to fill out paperwork for her son.  [Filing No. 42 at 5.]  However, even if she had been approved to take FMLA leave to care for her son, Mr. Muncy's honest belief would be unaffected.  Mr. Muncy would have still been presented with an employee who took a vacation during FMLA leave without any documentation allowing her to do so.  Similarly, that Ms. Husejnovic took two vacation days at the beginning of her leave in lieu of knowing the exact dates does not save her because she did not inform BWAY when she was able to schedule her vacation, nor did her vacation paperwork reflect that possibility. [*See* Filing No. 33-3 at 69.]

Moreover, despite her arguments to the contrary, that Ms. Husejnovic was in Istanbul, Turkey rather than Bosnia is relevant.  Ms. Husejnovic's FMLA paperwork indicated that she would be in Bosnia caring for her mother.  Her Facebook posts showing her in a different country

hundreds of kilometers from Bosnia is evidence to support an honest suspicion that she was misusing her FMLA leave.[4]

Finally, though not discussed in her response, Ms. Husejnovic asserts in her Statement of Claims that BWAY's "alleged legitimate non-discriminatory reason for terminating her was a pretext for discrimination and was in a retaliation for Plaintiff's intent on exposing poor product being approved for use when it did not pass quality control tests." [Filing No. 30 at 2-3.] However, this theory is inapplicable in an FMLA claim: "[T]he finding of pretext must be related to the alleged right infringed." *Jenkins v. Ford Motor Co.*, 2008 WL 5102126, at *6 (S.D. Ind. Dec. 1 2008). Ms. Husejnovic's pretext argument is that she was fired because she intended to expose the approval of a poor product, it is not that she was fired for her use of FMLA leave. This conduct does not violate the FMLA. However, because Ms. Husejnovic did not bring those claims in this lawsuit, this Court has no authority to decide in this case whether her termination violated those other laws. *See id.* Therefore, BWAY's Motion as it relates to Ms. Husejnovic's retaliation claim is granted.

## IV.
### CONCLUSION

For the reasons set forth above, BWAY's Motion for Summary Judgment, [33], is **GRANTED**. Final Judgment shall enter accordingly.

---

[4] Ms. Husejnovic's reliance on *Ballard*, 741 F.3d at 840, is misguided. In *Ballard*, the plaintiff requested FMLA leave to accompany her terminally-ill mother to Las Vegas for a trip funded by a non-profit organization. *Id.* at 839-40. The plaintiff's FMLA request was ultimately denied, but she was not informed until after they had left for Las Vegas. The Court found that the plaintiff would have been entitled to care for her mother in Chicago (where the mother lived), and if the mother had lived in Las Vegas, the plaintiff would have been entitled to care for her mother there. *Id.* The facts of this case, however, are unlike *Ballard*. First, Ms. Husejnovic was permitted to travel to Bosnia to care for her mother. The issue arose when Ms. Husejnovic traveled to Turkey. She had not informed (nor did she ever inform) BWAY of her intention to do so, nor did she request approval.

Date: 6/9/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**